UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
JUAREZ F. BARRETO,

                      Plaintiff,        <u>MEMORANDUM & ORDER</u>
                                       10-CV-0028(JS)(AKT)

    - against -

THE COUNTY OF SUFFOLK, et al.,

                      Defendants.
----------------------------------X
APPEARANCES:
For Plaintiff:       Juarez F. Barreto, <u>Pro</u> <u>Se</u>
                       09A5863
                       Riverview Correctional Facility
                       P.O. Box 247
                       Ogdensburg, NY 13669

For Defendants:     Brian C. Mitchell, Esq.
                       Suffolk County Dept. of Law
                       100 Veterans Memorial Highway
                       P.O. Box 6100
                       Hauppauge, NY 11788

SEYBERT, District Judge:

       Pro se plaintiff Juarez F. Barreto ("Plaintiff") brings
the current action pursuant to 42 U.S.C. § 1983 ("Section 1983")
against the County of Suffolk, John Doe #1, John Doe #2, and John
Doe #3 (collectively, "Defendants"), alleging that Defendants
violated his Eighth Amendment rights by failing to protect him from
violent inmate assault and by denying him appropriate medical care.

       Before this Court is Defendants' motion to dismiss
pursuant to Rule 12(b)6 of the Federal Rules of Civil Procedure.
Defendants set forth three grounds for dismissal: (1) the Amended
Complaint failed to sufficiently identify the John Doe defendants
as required by Fed. R. Civ. P. Rule 8(a)(2); (2) the Amended

Complaint fails because § 1983 claims cannot be predicated upon negligence, and Plaintiff fails to plead enough facts to assert deliberate indifference; and (3) the Amended Complaint failed to establish that a municipal custom or policy resulted in the violation of Plaintiff's rights. For the reasons stated below, Defendants' motion is GRANTED in part and DENIED in part.

<u>BACKGROUND</u>

The following facts are alleged by Plaintiff and regarded as true for the purpose of this motion. On October 18, 2009, while in the custody of Suffolk County Correctional Facility ("the Correctional Facility"), Plaintiff alleges that he was assaulted from behind by another inmate, Maurice Wallace ("Wallace"). (Am. Compl. ¶ 5.) Wallace is a known member of the Bloods gang and had committed three other attacks while in Suffolk County's custody, and the correctional staff knew about his disciplinary history. (<u>Id.</u> ¶¶ 7, 14.)

The assault caused Plaintiff to hit his head on a metal bed frame, shattering Plaintiff's cheekbones as well as his left eye socket. (<u>Id.</u> ¶¶ 9, 12-13.) At the time of the assault, John Doe #1 ("Doe 1"), the corrections officer responsible for supervision of Plaintiff's unit, was not present. (<u>Id.</u> ¶ 5.) Plaintiff alleges that if Doe 1 had provided adequate supervision, the assault could have been prevented. (<u>Id.</u>)

On October 28th, 2010, Plaintiff underwent surgery at

Stony Brook University Medical Center for the injuries he incurred. (Id. ¶ 12.) Upon his return to the Correctional Facility, Plaintiff sought medical attention regarding his inability to urinate and the resulting pain in his bladder. (Id. ¶ 16.) He was informed by the physician on duty that his symptoms were side effects caused by the anesthesia used during surgery. (Id.) Later that evening, Plaintiff still could not urinate and was taken to the medical unit where he had 1000 cc of urine and blood evacuated via a catheter. (Id.)

At 2 a.m., October 29, 2010, Plaintiff woke up to "extreme pain" created by his swollen bladder. (Id. ¶ 17.) Plaintiff explained his medical condition to John Doe #2 ("Doe 2"), the corrections officer on duty, and requested to be taken to the medical unit. (Id.) Doe 2 refused, stating that the medical unit was closed. (Id.) At 3 a.m., Plaintiff again requested to be taken to the medical unit at which time Doe 2 reiterated that the medical unit was closed and that he was not going to wake up the sergeant in charge. (Id.) Doe 2 then stated that Plaintiff "needs an attitude adjustment" and that Doe 2 "[doesn't] give a fuck." (Id.) Doe 2 was replaced by a different corrections officer at approximately 7:30 a.m. (Id. ¶ 18.) Plaintiff was finally taken to the medical unit at 9:30 a.m., at which time 1500 cc of urine and blood was evacuated to relieve the pressure on Plaintiff's bladder. (Id.) Later that evening, Plaintiff underwent

evacuations of 1000 cc of urine and blood at 6:30 p.m. and again at 11:30 p.m. (<u>Id.</u> ¶¶ 18-19.) Upon Plaintiff's return to his cell following his medical treatment, Doe 2 stated that Plaintiff is "nothing but a soft ass spick" and that Plaintiff should "get the fuck out of [A]merica." (<u>Id.</u> ¶ 20.)

Having gone without prompt medical treatment, Plaintiff developed urinary tract and bladder infections. (<u>Id.</u> ¶¶ 21-22.) According to Plaintiff, John Doe #3 ("Doe 3") (apparently Dr. David Prentiss) failed to properly diagnose the infections despite multiple visits by Plaintiff. (<u>Id.</u> ¶ 21.) Plaintiff alleges that he did not receive proper care until he was taken under the custody of the New York State Department of Corrections. (<u>Id.</u>)

Plaintiff also asserts that the County violated his rights when it housed Plaintiff in the same unit as violent offenders, such as Wallace. (<u>Id.</u> ¶¶ 30-34.) Plaintiff alleges that the County's knowledge of these individuals' criminal records and its subsequent failure to segregate these individuals constituted deliberate indifference to a serious risk of harm in violation of the Eighth Amendment. (<u>Id.</u> ¶ 34.)

Lastly, Plaintiff alleges that his Eighth Amendment rights were violated in a separate and unrelated incident. On September 19, 2009, Plaintiff incurred headaches, chills, and problems breathing. (<u>Id.</u> ¶ 25.) Plaintiff believes that his illness was caused by the conditions in his cell; the cold and damp

cell was covered with mold and mildew due to a water leak. (<u>Id.</u> ¶ 24.) Plaintiff further alleged that the corrections officers and maintenance staff knew of this condition but took no precautions despite his repeated complaints. (<u>Id.</u>) A few days later, Plaintiff was diagnosed by the medical staff as having a common cold. (<u>Id.</u>) Plaintiff later coughed up blood and was sent to the Peconic Bay Medical Center for emergency care. (<u>Id.</u> ¶ 27.) While there, Plaintiff was treated by Doe 3 as well as a specialist at the hospital. (<u>Id.</u>) Doe 3 informed Plaintiff that the cause of his illness was an infection. (<u>Id.</u> ¶ 28.) The specialist also informed Plaintiff that his lungs contained a fungal infection. (<u>Id.</u>) Plaintiff claims that the medical staff at the Correctional Facility was negligent with their initial diagnosis and that Doe 3 misled and lied to Plaintiff regarding the real cause of his illness. (<u>Id.</u> ¶ 29.)

In relief, Plaintiff seeks a full investigation of the Correctional Facility and its practices as well as eight million dollars in damages.

DISCUSSION

I.  <u>Standard of Review</u>

In deciding motions to dismiss brought under Rule 12(b)6 of the Federal Rules of Civil Procedure, the Court applies a "plausibility standard," which is guided by "[t]wo working principles." <u>Ashcroft v. Iqbal</u>, __ U.S. __, 129 S. Ct. 1937, 1949,

5

173 L. Ed. 2d 868 (2009); Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009). First, although the Court must accept all of a complaint's allegations as true, this "tenet" is "inapplicable to legal conclusions"; thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Harris, 572 F.3d at 72 (quoting Iqbal). Second, only complaints that state a "plausible claim for relief" survive a motion to dismiss. Id. Determining whether a complaint does so is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

It is axiomatic that the Court is required to read the Plaintiff's pro se submissions liberally and to construe them "'to raise the strongest arguments that they suggest.'" Soto v. Walker, 44 F.3d 169, 173 (2d Cir. 1995) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)). "Dismissal, however, is [proper] . . . for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988).

## II.  Application of Rule 8(a)(2)

Fed. R. Civ. P. Rule 8(a)(2) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Pleadings must give "fair notice" of a claim and "the grounds upon which it rests" to enable the

opposing party to answer and prepare for trial, and to identify the nature of the case. <u>Dura Pharm., Inc. v. Broudo</u>, 544 U.S. 336, 346, 125 S. Ct. 1627, 161 L. Ed. 2d 577 (2005) (citation omitted); <u>Swierkiewicz v. Sorema, N.A.</u>, 534 U.S. 506, 512, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002).

The driving rationale behind Rule 8(a)(2) is to provide an adverse party with notice of the claims asserted and to limit the burden imposed on both courts and litigants by unnecessarily verbose and incoherent pleadings. <u>See</u> <u>Salahuddin</u>, 861 F.2d at 42. In that vein, the Supreme Court has held that complaints containing only vague or conclusory accusations with no specific facts regarding the alleged wrongdoing do not allow defendants to frame an intelligent defense and are therefore subject to dismissal. <u>See</u> <u>Neitzke v. Williams</u>, 490 U.S. 319, 325, 327 (1989); <u>Alfaro Motors, Inc. v. Ward</u>, 814 F.2d 883, 887 (2d Cir. 1987). All complaints, including <u>pro</u> <u>se</u> complaints, must contain at least "some minimum level of factual support for their claims." <u>Megna v. United States Dep't of the Navy</u>, 317 F. Supp. 2d 191, 192 (E.D.N.Y. 2004).

In this Court's order <u>sua</u> <u>sponte</u> dismissing Plaintiff's original Complaint, Plaintiff was directed to amend the Complaint to "name as proper defendants those individuals who have some personal involvement in the actions he alleged" so as to conform to Rule 8(a)(2)'s demands. <u>Barreto v. County of Suffolk</u>, No. 10-CV-0028, slip op. at 10 (E.D.N.Y. Jan. 20, 2010). Defendants argue

that Plaintiff's Amended Complaint fails to add additional or specific facts to comply with this directive. In <u>Valentin v. Dinkins</u>, 121 F.3d 72 (2d. Cir. 1997), however, the Second Circuit made clear that a <u>pro se</u> litigant is entitled to assistance from the district court in identifying a defendant. The Court is satisfied that Plaintiff has provided sufficient factual basis to allow the Defendants to successfully identify the John Doe defendants and prepare for a defense.

To that end, Plaintiff has identified the specific posts that the John Doe defendants were assigned to, as well as their presence (or lack thereof) at a specified time and place. Moreover, Plaintiff has also provided the grounds for liability with regards to each of the Defendants. Given the foregoing, Defendants not only have ample notice as to the nature of the claims brought against them but also the opportunity to prepare an intelligent defense. As such, Defendants' motion to dismiss based on grounds of insufficient identification is DENIED.

III. <u>Section 1983</u>

Section 1983 states, in relevant part, that an individual has a claim in law against a "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights and privileges, or immunities secured by the Constitution and laws." 42 U.S.C. §

1983.  To state a claim under Section 1983, a plaintiff must allege: (1) that the defendant acted under color of state law; and (2) that as a result of the defendant's actions, the plaintiff suffered a deprivation of his or her rights or privileges as secured by the Constitution or laws of the United States.  See Am. Mfr. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50, 119 S. Ct. 977, 143 L. Ed. 2d 130 (1999); Giordano v. City of New York, 274 F.3d 740, 750 (2d Cir. 2001).  Section 1983 does not afford any substantive rights to litigants; rather, it merely provides a vehicle for vindicating already existing federal rights.  See Baker v. McCollan, 443 U.S. 137, 144 n. 3, 99 S. Ct. 2689, 61 L. Ed. 2d 433 (1979).

Plaintiff argues that Defendants' conduct violated his Eighth Amendment right to be free from cruel and unusual punishment.  The Eighth Amendment requires prison officials to take reasonable measures to guarantee the safety of the inmates in their custody.  See Farmer v. Brennan, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994).  Prison officials may face Eighth Amendment liability if they fail to take reasonable measures to protect inmates from other inmates.  Id. at 833; see also Hayes v. New York City Dep't of Corr., 84 F.3d 614, 620 (2d Cir. 1996).  Not every prison scuffle is a matter of constitutional import however; the mere existence of the chance that a prisoner might be injured by another prisoner does not violate the Eighth Amendment.

Hamilton v. Riordan, et al., No. 07-CV-7163, 2008 WL 4222089, *1 (S.D.N.Y. Sept. 11, 2008). The Supreme Court employs a two-prong framework in determining whether an Eighth Amendment violation exists.

First, the deprivation alleged must be, objectively, sufficiently serious. Farmer, 511 U.S. at 834. In order to qualify as a serious deprivation under the first prong of the Eighth Amendment analysis, Plaintiff need not prove that the injury was life-threatening or likely to result in permanent disability. Thomas v. Tisch, No. 08-CV-0400, 2009 WL 701009, *7 (E.D.N.Y. Mar. 11, 2009). Indeed, it is settled law in this Circuit that an intentional delay in necessary medical care, amounting in effect to a form of punishment, is actionable. Id. at *8; see also Archer v. Dutcher, 733 F.2d 14, 16-17 (2d Cir. 1984). Moreover, deprivations of medical care that cause or perpetuate pain are sufficient to state an Eighth Amendment claim. Brock v. Wright, 315 F.3d 158, 163 (2d Cir. 2003); Thomas v. Tisch, No. 08-CV-0400, 2009 WL 701009, *7 (E.D.N.Y. Mar. 11,2009).

The second prong of the Eighth Amendment analysis requires Plaintiff to show that Defendants were subjectively aware of an excessive risk to inmate health and safety, and that Defendants consciously disregarded that risk by failing to take reasonable measures to ensure a safe environment. Hayes, 84 F.3d at 620; see also Rangolan v. County of Nassau, 217 F.3d 77, 79 (2d

Cir. 2000) (holding no deliberate indifference when a failure to take reasonable measures was due to defendant's mistake).

A.  Doe 1

Plaintiff claims that Doe 1 "was not present at the tier" when he should have been, and that Wallace's "assault could have been prevented if there was a Corrections officer properly overseeing the tier." (Am. Compl. ¶ 5.) But, although Plaintiff avers that the corrections staff were generally aware of Wallace's disciplinary violations, Plaintiff pleads no facts to suggest that Doe 1 had any subjective awareness that his absence posed a substantial risk of serious harm. So his claim against Doe 1 alleges only negligence, not deliberate indifference. See Farmer, 511 U.S. at 837 (defining deliberate indifference as requiring a subjective awareness, rather than the objective test of reasonableness under the negligence standard). And mere negligence does not support an Eighth Amendment claim. Hayes, 84 F.3d at 620; Johnson v. Smith, 354 Fed. Appx. 516, 516 (2d. Cir. 2009) (holding that mere knowledge of a defect is not sufficient to amount to an Eighth Amendment claim, defendant must also draw the inference that a substantial risk of serious harm exists).

Thus, Defendants' motion to dismiss is GRANTED with regards to Plaintiff's claim against Doe 1.

B.  Doe 2

Plaintiff's allegations against Doe 2 concern the denial

of medical care. To plead deliberate indifference, Plaintiff must allege facts showing that Doe 2 intentionally denied or delayed Plaintiff's access to medical care. Doe v. Goord, No. 04-CV-0570, 2005 WL 3116413, at *12 (S.D.N.Y. Nov. 22, 2005) (citing Estelle v. Gamble, 429 U.S. 97, 104-05, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)). He has done so. As the Amended Complaint alleges, Plaintiff suffered severe post-surgery complications on October 28, 2009, which led to the prison's medical staff evacuating 1000 ccs of blood and urine from him via catheter. (Am. Compl. ¶ 16.) Later that night, at 2 a.m. on October 29th, he reported extreme pain to Doe 2, and requested medical care. (Am. Compl. ¶ 17.) Doe 2 responded that the medical unit was closed, and he would have to "come back later." (Id.) One hour later, Plaintiff repeated his request and Doe 2 responded by telling him he needed an "attitude adjustment," that Doe 2 did not "give a fuck," and that Doe 2 would not "wake up the sergeant for some bullshit." (Id.) So, after being alerted to Plaintiff's need for prompt medical care, Plaintiff alleges that Doe 2 intentionally delayed or denied it because he didn't "give a fuck." The Court finds that this series of events suffices to plead Doe 2's deliberate indifference to Plaintiff's condition. See Goord, 2005 WL 3116413, at *12; Archer, 733 F.2d at 16 (delaying medical care for five hours while knowing that plaintiff was in extreme pain stated Eighth Amendment claim). This is particularly so because Plaintiff did not ultimately

12

receive care until 7:30 the next morning, roughly five and a half hours after his initial complaint to Doe 2. See Bass v. Jackson, 790 F.2d 260, 263 (2d Cir. 1986) (finding that a delay of five to six hours in receipt of medical care could amount to deliberate indifference). And, further supporting the suggestion that Doe 2 was deliberately indifferent to Plaintiff's pain, Plaintiff alleges that, upon learning that Plaintiff had "1500 cc of Murky Brown urine mixed with a large amount of blood" evacuated (Id. ¶ 18), Doe 2 responded "you are a soft ass spick, get the fuck out of [A]merica asshole."

Consequently, Defendants' motion to dismiss Plaintiff's claim against Doe 2 is DENIED.

C.   Doe 3

Plaintiff's claims against Doe 3 sound in medical malpractice. But an inadvertent failure to provide proper medical care does not constitute deliberate indifference under the Eighth Amendment. Estelle, 429 U.S. at 105-206. Indeed, medical malpractice does not become a constitutional violation merely because the victim is a prisoner. Id. at 106. Instead, malpractice becomes an actionable constitutional violation only if it involves culpable recklessness, i.e., an act or a failure to act by the doctor that evinces a conscious disregard of a substantial risk of serious harm. Goord, 2005 WL 3116413 at *12.

1. <u>Urinary Tract & Bladder Infections</u>

Plaintiff failed to state a claim with regards to the urinary tract and bladder infections.  Plaintiff alleges that Doe 3 "failed to properly diagnose" his condition, failed to "care for the new problem that developed," and did not administer "proper treatments."  (Am. Compl. ¶ 21.)  Plaintiff does not, however, allege any facts suggesting that Doe 3 was deliberately indifferent to his condition, or used anything less than his best efforts in attempting to treat him.  At most, Plaintiff alleges that Doe 3's treatments didn't work, and may have been poor medical decisions.  But the Eighth Amendment does not require perfection in Doe 3's provision of care to Plaintiff.  Courts have consistently recognized that medical malpractice is not a constitutional violation simply because the patient is a prisoner.  <u>See</u> <u>Estelle</u>, 429 U.S. at 105; <u>see</u> <u>also</u> <u>Thomas</u>, 2009 WL 701009 at *8 n. 4 (collecting cases).

In the absence of allegations that Doe 3 knowingly or with deliberate indifference failed to provide the proper treatment, the Amended Complaint fails to allege that Doe 3 violated Plaintiff's constitutional rights.  <u>See</u> <u>Henry v. Nassau University Medical Center</u>, No. 06-CV-6867, 2008 WL 638246, *4 (E.D.N.Y. Mar. 6, 2008).  Defendants' motion to dismiss will be GRANTED as to Plaintiff's claim against Doe 3 regarding the urinary tract and bladder infections.

14

2. <u>Fungal Infection</u>

Plaintiff alleges that, on October 7, 2009, Doe 3 lied when he told Plaintiff that Plaintiff was suffering from a "simple infection." (Am. Compl. ¶ 28.) In fact, Plaintiff alleges, his condition was much more serious. (<u>Id.</u>)

The Court finds that these allegations do not state a constitutional violation. Plaintiff does not allege that Doe 3 denied him medical care, or even treated his infection improperly. And Plaintiff cites no authority suggesting that Doe 3 had a <u>constitutional</u> obligation to tell him the truth. Thus, his claim fails on this ground. Additionally, Plaintiff does not allege that the lie injured him in any way.[1] So, absent allegations of a serious injury or deprivation, Plaintiff's claim fails the first prong of the <u>Farmer</u> analysis.

Accordingly, Defendants' motion to dismiss with regards to this claim is also GRANTED.

IV. <u>The County of Suffolk</u>

The Supreme Court has "consistently refused to hold municipalities liable under a theory of respondeat superior." <u>Board of the County Comm'rs v. Brown</u>, 520 U.S. 397, 403, 117 S. Ct.

---

[1] Plaintiff alleges that the medical staff had misdiagnosed the condition while he was at the Correctional Facility. However, Plaintiff has not named members of the medical staff as parties and as a result, their liability is not at issue in the present case. In any event, Plaintiff expressly predicates these allegations on a negligence theory. (Am. Comp. ¶ 29.)

1382, 137 L. Ed. 2d 626 (1997). When bringing a Section 1983 action against a municipality, a plaintiff is required to plead three elements: "'(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right.'" Zahra v. Southold, 48 F.3d 674, 685 (2d Cir. 1995) (internal citations omitted). "Local governing bodies . . . may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision making channels." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-91, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).

The existence of a municipal policy or custom may be pled in four ways: (1) the existence of a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final decision-making authority, which caused the alleged violation of plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied on the part of the policymaking officials; or (4) a failure by policymakers to properly train or supervise their subordinates, amounting to deliberate indifference to the rights of those who come in contact with municipal employees. Bonds v. Suffolk County Sheriff's Dept., No. 05-CV-3109, 2006 U.S. Dist. Lexis 93607, at * 5 (E.D.N.Y. 2006) (internal quotations and citations omitted).

16

Construed liberally, Plaintiff attempts to allege that the following policies or customs caused his injuries: (A) Suffolk County's policy of housing violent and non-violent inmates together resulted in Wallace's assault (Am. Compl. ¶ 14; <u>see also</u> ¶¶ 30-34); (B) Suffolk County's failure to "properly supervise its staff" resulted in Wallace's assault (<u>id.</u> at ¶ 14); and, (C) Suffolk County's policy of not properly maintaining the prison resulted in the mold that caused Plaintiff's severe fungal infection (<u>id.</u> at ¶¶ 24-29.)  The Court considers each of these purported policies, in turn.

A.   <u>Inmate Housing Policy</u>

The Court finds that Plaintiff has adequately alleged that Suffolk County had a policy of not separating violent from non-violent inmates.  By itself, this housing policy does not violate the Eighth Amendment.  <u>See</u> <u>Burrell v. Hampshire County</u>, 307 F.3d 1, 10 (1st Cir. 2002) ("policy of not screening and then segregating potentially violent prisoners from non-violent prisoners is not itself a facial violation of the Eighth Amendment"); <u>Martin v. Tyson</u>, 845 F.2d 1451, 1456 (7th Cir. 1988) (in making housing decisions, "classification of inmates, whether or not desirable, is not a constitutional requirement").  But even a facially constitutional policy can impose municipal liability "if the policy can be shown to produce constitutional violations." <u>Burrell</u>, 307 F.3d at 10.  To establish liability, the plaintiff

must show a "'direct causal link' between the policy and the violation." <u>Id.</u>

At the motion to dismiss stage, Plaintiff obviously has no burden to establish a constitutional violation. He need only allege enough facts to set forth a "plausible" claim. <u>Harris</u>, 572 F.3d at 72. He has done so. Specifically, Plaintiff has alleged that: (i) Suffolk County housed him in the same tier as Wallace, other violent offenders, and numerous gang members (Am. Compl. ¶¶ 4, 30-34); (ii) Suffolk County knew specifically that Wallace had a "record of previous attacks on inmates," having previously committed "three other attacks" while in Suffolk County's custody (<u>id.</u> ¶¶ 4, 7); (iii) despite this knowledge, Suffolk County took "no action" to "segregate" Wallace from the general population (<u>id.</u> ¶ 14); (iv) the practice of housing non-violent and violent offenders constitutes Suffolk County's "common and unofficial practice" (<u>id.</u> ¶ 30, 34); (v) when Wallace assaulted him, Suffolk County also housed Plaintiff with a Latin Kings gang member, Peter Cortez (<u>id.</u> ¶ 32); (vi) following Wallace's assault, Suffolk County moved him to a tier that included at least four violent felony offenders, including an MS-13 gang member (<u>id.</u> ¶ 31); and, (vii) Suffolk County previously housed Plaintiff with violent offenders once before. (<u>Id.</u> ¶ 33.) Accepting these allegations as true, Plaintiff has alleged not just an overall policy of housing violent and non-violent offenders together, but that the County failed to

segregate even those violent offenders who it <u>knew</u> had a track record of violently attacking fellow inmates while incarcerated, thereby suggesting that the County consciously disregarded serious risks to inmate safety. And he has further alleged, through Wallace's battery, a direct causal link between the challenged policy (or policies) and his injury.

In this regard, the Court notes that, although inmates rarely succeed in proving Eighth Amendment claims predicated on housing violent and non-violent inmates together, such claims typically survive motions to dismiss, at least when the plaintiff alleges that he suffered a resulting harm (as Plaintiff does here).[2] This is because federal courts recognize that, at least when combined with other aggravating factors, a policy of housing violent and non-violent offenders together can be "part of an Eighth Amendment violation." <u>See</u> <u>Burrell</u>, 307 F.3d at 10. Inmates generally lose these claims not on motions to dismiss, but at summary judgment or trial, after they fail to produce sufficient evidence to support an Eighth Amendment violation, such as by

---

[2] <u>See</u> <u>Marsh v. Butler County, Ala.</u>, 268 F.3d 1014, 1029 (11th Cir. 2001) (prisoner stated Eighth Amendment claim based, in part, on failure to segregate violent from non-violent offenders); <u>Tinker v. Fries</u>, 08-CV-0181, 2009 WL 89669, at *4 (N.D. Ind. 2009) (prisoner stated claim against prison official for assigning a "dangerous, mentally-ill patient named Maddox to his cell, who later attacked [the prisoner] in his sleep"); <u>but see</u> <u>Yergeau v. Vermont Dept. of Corrections</u>, 09-CV-0141, 2010 WL 1472899, at *1 (D. Vt. Mar. 8, 2010) (Conroy, M.J.) (recommending dismissal because "housing violent and non-violent offenders in the same prison unit" does not violate federal law).

failing to adduce evidence reflecting deliberate indifference on the official's or municipality's part.[3]

Here, Plaintiff may, or may not, have a legitimate Eighth Amendment claim. But he has alleged enough to get a shot at proving it through the discovery process.

B. <u>Failure to Supervise Claim</u>

Plaintiff alleges that Suffolk County "failed to properly supervise its staff." (Am. Compl. ¶ 14.) But this allegation is wholly conclusory, lacking a single factual allegation to support it. Consequently, Plaintiff's failure to supervise claim is DISMISSED.

C. <u>Prison Maintenance Policy</u>

Plaintiff alleges that his prison cell had a water leak that "caused the walls of the cell to be covered with mold and

---

[3] <u>K.F.P. v. Dane County</u>, 110 F.3d 516, 519 (7th Cir. 1997) (granting county summary judgment because, although prisoner alleged policy of "housing violent and non-violent inmates together," discovery failed to uncover "evidence that this is an actual policy . . . let alone that any county official knew of a causal link between this policy and harm to inmates"); <u>James v. Milwaukee County</u>, 956 F.2d 696, 701 (7th Cir. 1992) (affirming directed verdict because plaintiff failed to prove at trial that county acted with deliberate indifference in enacting policy that housed violent and non-violent inmates together); <u>Everett v. Donate</u>, 08-CV-1243, 2010 WL 1253493, at *4 (M.D. Pa. Mar. 24, 2010) (granting summary judgment because evidence established that prison did, in fact, house inmates according to detailed classification system); <u>Hendricks v. Galloway</u>, 03-CV-0740, 2004 WL 3090229, at *7 (D.S.C. 2004) (no Eighth Amendment violation stemming from housing policy because plaintiff failed to prove injury).

mildew." (Am. Compl. ¶ 24.) He further alleges that "facility Correctional officers and maintenance staff were aware" of the problem but failed to remedy it, despite his complaints to the unspecified "tier Correctional officer." (Id.)

Poor confinement conditions can state an Eighth Amendment claim, if they result "in unquestioned and serious deprivations of basic human needs." Anderson v. Coughlin, 757 F.2d 33, 35 (2d Cir. 1985) (quotation marks omitted). But, like other Eighth Amendment claims, Plaintiff must plead facts reflecting that the County imposed those conditions with "deliberate indifference." Wilson v. Seiter, 501 U.S. 294, 297, 111 S. Ct. 2321, 2323, 115 L. Ed. 2d 271 (1991).

Here, arguably, the presence of dangerous mold and mildew in his cell might meet the first prong. But Plaintiff pleads nothing to support an allegation that Suffolk County imposed these conditions out of deliberate indifference. Plaintiff does not identify the "Correctional officers and maintenance staff" who knew about the problem,[4] much less allege that Suffolk County granted any policy making authority to any these individuals. Nor does Plaintiff otherwise plead facts to suggest that his cell's poor condition resulted from an official or unofficial Suffolk County policy, or from Suffolk County's inadequate training or supervision

---

[4] Plaintiff apparently has not sued these persons individually, as he has not listed them as Defendants either by name or as John Does.

of its employees.  Consequently, to the extent that Plaintiff attempts to assert a _Monell_ claim against Suffolk County based on the water, mold and mildew in his cell, that claim is DISMISSED.

V.    Appointment of Counsel

On January 20, 2010, in connection with dismissing Plaintiff's initial Complaint, the Court denied Plaintiff's motion for appointment of counsel.  The Court now _sua_ _sponte_ reconsiders this decision.  Unlike his original Complaint, Plaintiff's Amended Complaint sets forth two potentially cognizable claims: (1) a claim against Doe 2, stemming from the denial of medical care; and (2) a _Monell_ claim against Suffolk County, stemming from an alleged policy of housing violent and non-violent inmates together, and/or not segregating those inmates who repeatedly attack their fellow prisoners.  Both of these claims may require extensive deposition questioning and/or cross-examination to prove.  _See_ _Terminate Control Corp. v. Horowitz_, 28 F.3d 1335, 1341 (2d Cir. 1994) ("whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder" is a factor in deciding whether to appoint counsel) (internal quotations and citations omitted).  And the _Monell_ claim against Suffolk County may require both significant factual investigation into the County's policies and practices, and serious legal research into the factors courts have considered in determining when an inmate-on-inmate battery can support and Eighth

Amendment violation.  See id. ("complexity of the legal issues" can justify appointing counsel) (internal quotations and citations omitted).  Thus, the Court now finds that appointment of counsel is warranted.

The Court does not, however, wish to trample upon Plaintiff's right to litigate pro se.  And it is possible that, although Plaintiff desired counsel back in January, he no longer does so.  Consequently, the Court directs Plaintiff to inform the Court within twenty (20) days whether he still wants appointed counsel.

CONCLUSION

Based on the foregoing, Defendants' motion to dismiss is GRANTED in part and DENIED in part.  Defendants' motion to dismiss is GRANTED except for: (1) Plaintiff's claim against Doe 2, stemming from the delay/denial of medical treatment; and (2) Plaintiff's claim against Suffolk County, stemming from Wallace's battery of him.  The Court has sua sponte reconsidered its denial of Plaintiff's motion to appoint counsel.  If Plaintiff still wants counsel, he should inform the Court within twenty (20) days.


SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:    December   22  , 2010
          Central Islip, NY